[Cite as *State v. Crossley*, 2026-Ohio-3136.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-76 |
| Appellee | : | |
| | : | Trial Court Case No. 25-CR-0511 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JIYAH CROSSLEY | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 14, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

LEWIS, P.J., and TUCKER, J., concur.

FAITH M.R. EDWARDS, Attorney for Appellant
JOHN M. LINTZ , Attorney for Appellee

HANSEMAN, J.

**{¶ 1}** Jiyah Crossley appeals from his convictions in the Clark County Common Pleas Court after pleading guilty to two counts of attempted murder with a firearm specification and one count of carrying a concealed weapon. In support of his appeal, Crossley claims that the juvenile division of the common pleas court erred by transferring his case to the general division so that he could be prosecuted as an adult. Crossley argues that the juvenile court abused its discretion by determining that he was not amenable to rehabilitation within the juvenile system. For the reasons outlined below, we disagree with Crossley's claim and affirm the judgment of the juvenile court.

## Facts and Course of Proceedings

**{¶ 2}** On March 10, 2025, Crossley was charged by complaint in juvenile court with two counts of attempted murder, four counts of felonious assault, two counts of discharge of a firearm on or near a prohibited premises, one count of carrying a concealed weapon, and several firearm specifications. The charged offenses and specifications stemmed from allegations that on the afternoon of March 4, 2025, Crossley walked up to a parked vehicle containing two unsuspecting teenage girls who were waiting for a food order at a local take-out restaurant in Springfield, Ohio. Standing at a close range, Crossley fired multiple gunshots at the girls. One of the victims was shot twice in her right shoulder, once in her right hand, and twice in her right thigh. The other victim was grazed by a bullet on her right

2

upper thigh. Neither victim knew Crossley, and they both suffered physical and psychological harm as a result of the incident.

{¶ 3} On April 7, 2025, the juvenile court held a probable cause hearing on the charges. Following the hearing, the juvenile court found that there was probable cause to believe that Crossley had committed the charged offenses. In light of that finding, the juvenile court appointed Dr. Daniel Hrinko, a licensed forensic and clinical psychologist, to evaluate whether Crossley would be amenable to rehabilitation within the juvenile justice system, or whether jurisdiction of the matter should be transferred to the court's general division where Crossley would be prosecuted as an adult.

{¶ 4} After evaluating Crossley, Hrinko submitted a report documenting his findings and his forensic opinion on the amenability issue. Hrinko concluded that "it is more likely than not that [Crossley] is a good candidate for rehabilitation within the services available within the juvenile justice system and that the evidence suggests it is more likely than not he can benefit from treatment services within the limited time available to the juvenile justice system." Psychological Evaluation (May 13, 2025), p. 15. Hrinko also concluded that "it is more likely than not that the safety of the community can be adequately protected within the resources of the juvenile system." *Id*.

{¶ 5} On June 16, 2025, the trial court held an amenability hearing, during which Hrinko testified regarding the findings in his report. Hrinko testified that Crossley fell on the low to very low range of intellectual capabilities and that he had problems with mood stability and impulse control. Hrinko also testified that Crossley had been diagnosed with several mental illnesses, including post-traumatic stress disorder, attention deficit hyperactivity disorder, conduct disorder, and possible autistic spectrum disorder. Hrinko's report also indicated that Crossley had been diagnosed with intermittent explosive disorder. According

3

to Hrinko, Crossley had no history of medications for his mental disorders. Hrinko indicated that there could be significant improvements in Crossley's symptom control if medications were properly prescribed and taken by Crossley.

{¶ 6} Hrinko testified that he was not aware of any physical impairments that would be a barrier to Crossley's transfer to adult court. However, Hrinko added that Crossley was immature and would be subject to exploitation and further damage if he were placed in an adult correctional facility. Hrinko explained that Crossley was easily influenced and manipulated and would pursue inappropriate behaviors to gain others' acceptance and approval.

{¶ 7} Hrinko opined that an extended stay of 18 to 24 months in a highly structured juvenile program would be of a great benefit to Crossley. He recommended that the trial court place Crossley in a program with a 24-hour structure and therapeutic supportive services that would last long enough for Crossley's developmental maturity. Hrinko expressed hope that the court would be able to find a reasonable place to meet Crossley's needs so that he would be adequately prepared to reenter society as a productive adult before the age of 21.

{¶ 8} Although Hrinko concluded that Crossley was a good candidate for rehabilitation within the juvenile system, he recognized that his conclusion carried a level of uncertainty and that there were no guarantees with regard to Crossley's success in the juvenile system. Hrinko testified that Crossley posed a high risk for ongoing, inappropriate behaviors, including violence and aggressiveness toward others. Hrinko was also concerned about Crossley's frequent involvement with firearms.

{¶ 9} Hrinko's report indicated that, at the age of 12, Crossley was charged in juvenile court for bringing a firearm to school, for which he received two weeks of detention and five

4

months of house arrest. In March 2025, Crossley was caught possessing a firearm in a stolen vehicle and charged with improperly handling a firearm in a motor vehicle. Hrinko's report indicated that Crossley had also been charged with criminal damaging in May 2023 and with carrying a concealed weapon in August 2023, for which Crossley received a suspended commitment to Ohio's Department of Youth Services ("DYS"). In addition, Crossley was charged with receiving stolen property in February 2024, for which he was sent to Oakview, a juvenile rehabilitation center, from late April 2024 to early November 2024.

{¶ 10} According to Hrinko, the records from Oakview established that its program provided significant structure, prompting, and coaching for Crossley, which he responded well to. However, Hrinko explained that after completing the Oakview program, Crossley wanted to live with his mother and not the caretaker who had raised him, Pearlie McMahon. McMahon was a grandmother-like figure who had set firm boundaries and appropriate rules for Crossley. Hrinko testified that Crossley did not want to live with the rules of McMahon's home, and that when Crossley returned to the community in his mother's care, he had no structure. Hrinko explained that Crossley's mother, who had been arrested on drug charges, was irresponsible with regard to her parental duties. According to Hrinko, for several months after Crossley's release from Oakview, his mother did not follow up with his mental health care and allowed him to run the streets and guide his own life. During that time, Crossley missed school and did not make use of the therapeutic opportunities offered to him.

{¶ 11} Hrinko testified that the conduct charged in this case occurred less than four months after Crossley's release from Oakview. Hrinko said that, as a result, it was reasonable to say that Oakview was unsuccessful in rehabilitating Crossley. Hrinko explained that Crossley's ability to internalize what he had learned at Oakview was limited

5

by his emotional and developmental maturity. However, Hrinko testified that Crossley's developmental maturity would improve with age and with the appropriate structure of supportive services.

{¶ 12} The trial court also heard testimony from the juvenile court probation officer who was assigned to Crossley in February 2024. The probation officer testified that while there were moments of success, overall Crossley was not compliant with his probation. According to the probation officer, Crossley stopped attending his weekly meetings with her and his mental health counseling sessions. Crossley also tested positive for marijuana, did not attend his new school regularly, and failed to complete his schoolwork. The probation officer further testified that there was an incident at Crossley's new school where students told the teaching staff that Crossley had brought a firearm on the school's premises. The probation officer explained that the teaching staff never saw Crossley with a firearm but that Crossley left the school when the school administrator began to search the students.

{¶ 13} Crossley's guardian ad litem ("GAL") submitted a report to the juvenile court recommending that Crossley's case be transferred to adult court. The report indicated that the GAL believed Crossley was not a good candidate for rehabilitation within the juvenile system due to his behavior, history with firearms, and failure to apply what he had learned at Oakview. However, at the amenability hearing, the GAL changed his mind and advised the trial court that, after hearing Hrinko's testimony, he agreed with Hrinko's recommendations and believed that Crossley was a good candidate for rehabilitation given that Crossley was young and that he could attend DYS until he turned 21 years old. The GAL made his new recommendation while recognizing that Crossley has had several previous chances at rehabilitation in the juvenile system.

6

**{¶ 14}** After considering the evidence and statements presented at the amenability hearing, on June 24, 2025, the juvenile court issued a judgment entry ordering the transfer of Crossley's case to adult court. The trial court weighed the relevant statutory factors pertaining to whether Crossley was amenable to rehabilitation within the juvenile system and concluded that the factors weighed in favor of transfer. Crossley's case was transferred to the general division of the common pleas court where he was indicted for two counts of attempted murder, four counts of felonious assault, two counts of discharge of a firearm on or a near a prohibited premises, and two counts of carrying a concealed weapon. All but the two charges of carrying a concealed weapon included a firearm specification. Crossley entered negotiated guilty pleas to the two counts of attempted murder with firearm specifications and to the single count of carrying a concealed weapon. The trial court accepted Crossley's guilty pleas and sentenced Crossley to a jointly recommended sentence of 21 to 24.5 years in prison.

**{¶ 15}** Crossley now appeals from his convictions and raises a single assignment of error for review.

## Assignment of Error

**{¶ 16}** Under his assignment of error, Crossley claims that the juvenile court abused its discretion by transferring his case to adult court "without sufficient credible evidence of non-amenability in violation of R.C. 2152.12(B)." We disagree.

### Standard of Review

**{¶ 17}** "A juvenile court's amenability determination is reviewed under an abuse-of-discretion standard." *State v. Peaks*, 2025-Ohio-2707, ¶ 37 (2d Dist.). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 2013-Ohio-966, ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157

7

(1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). Decisions are unreasonable if they are not supported by a sound reasoning process. *Id*.

{¶ 18} We stress that "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34, citing *State v. Morris*, 2012-Ohio-2407, ¶ 14. "'[T]he test is not whether we would have reached the same result upon the evidence before the juvenile court; the test is whether the juvenile court abused the discretion confided in it.'" *State v. Howard*, 2018-Ohio-1863, ¶ 16 (2d Dist.), quoting *State v. Hopfer*, 112 Ohio App.3d 521, 535 (2d Dist. 1996). "'If there is some rational and factual basis to support the [juvenile] court's decision, we are duty bound to affirm it regardless of our personal views of the evidence.'" (Bracketed text in original.) *Id*., quoting *State v. West*, 2006-Ohio-3518, ¶ 10 (4th Dist.).

*Law Governing Jurisdictional Transfer*

{¶ 19} "Juvenile courts possess exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult." *In re M.P.*, 2010-Ohio-599, ¶ 11, citing R.C. 2151.23(A). "However, under certain circumstances, the juvenile court may—and in some cases, must—transfer jurisdiction to the appropriate adult court for criminal prosecution." *State v. Sawyer*, 2026-Ohio-1398, ¶ 18 (2d Dist.). Accordingly, "[t]wo types of transfer exist under Ohio's juvenile justice system: discretionary and mandatory." *State v. Ferguson*, 2017-Ohio-7930, ¶ 25 (2d Dist.). The instant case involves a discretionary transfer to adult court, which is governed by R.C. 2152.12(B).

{¶ 20} Pursuant to R.C. 2152.12(B), when a complaint has been filed alleging that a child is delinquent for committing an act that would be a felony if committed by an adult, the

8

juvenile court may transfer the child to adult court for prosecution if it finds "(1) [t]he child was fourteen years of age or older at the time of the act charged," "(2) [t]here is probable cause to believe that the child committed the act charged," and "(3) [t]he child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions." R.C. 2152.12(B)(1) through (3).

{¶ 21} In this case, Crossley does not dispute that he was 14 years old when the charged conduct occurred. He also does not challenge the juvenile court's determination that there was probable cause to believe that he had committed the charged conduct. Instead, Crossley only claims that the evidence failed to establish that he was not amenable to care or rehabilitation within the juvenile system.

{¶ 22} In making the amenability determination, the juvenile court must weigh the factors listed under R.C. 2152.12(D) and (E) and determine whether the applicable factors under section (D), which indicate the case should be transferred to adult court, outweigh the factors listed under section (E), which indicate the case should not be transferred to adult court. R.C. 2152.12(B)(3).

{¶ 23} The factors under R.C. 2152.12(D) favoring transfer are:

(1)     The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2)     The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3)     The child's relationship with the victim facilitated the act charged.

9

(4)     The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5)     The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6)     At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7)     The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8)     The child is emotionally, physically, or psychologically mature enough for the transfer.

(9)     There is not sufficient time to rehabilitate the child within the juvenile system.

{¶ 24} The factors under R.C. 2152.12(E) weighing against a transfer, are:

(1)     The victim induced or facilitated the act charged.

(2)     The child acted under provocation in allegedly committing the act charged.

10

(3)     The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4)     The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5)     The child previously has not been adjudicated a delinquent child.

(6)     The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7)     The child has a mental illness or intellectual disability.

(8)     There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 25} In addition to the foregoing factors, the juvenile court may consider "any other relevant factors" in favor of or against a transfer to adult court. R.C. 2152.12(D) and (E). "The juvenile court is not required to resolve every factor against the juvenile so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment." *Sawyer*, 2026-Ohio-1398 at ¶ 23 (2d Dist.), citing *State v. Bryant*, 2024-Ohio-1192, ¶ 16 (2d Dist.) and *State v. Watson*, 47 Ohio St.3d 93, 95 (1989). "Because the statutory scheme does not dictate how much weight should be given to any specific factor, the ultimate decision is within the juvenile court's discretion." *Id.*, citing *Bryant* at ¶ 16 and *Watson* at 95.

*Analysis*

{¶ 26} The record establishes that the juvenile court made findings on each of the factors under R.C. 2152.12(D) and (E). Under factors (D)(1), (D)(2), and (D)(3), the juvenile

11

court found that Crossley's two victims suffered physical and psychological harm as a result of the charged conduct, one of the victims was under the age of 18, and that Crossley had no relationship with either of the victims. Under factor (D)(4), the juvenile court found that there was no evidence indicating that the charged conduct was committed for hire or as part of a gang or other organized criminal activity.

{¶ 27} Under factors (D)(5), (D)(6), and (D)(7), the juvenile court found that Crossley had possessed and used a firearm during the charged conduct, was on probation for a prior delinquency adjudication at the time of the charged conduct, and had previously received several rehabilitation services, including probation, detention, mental health counseling, Youth Treatment Court, and treatment at Oakview, a DYS facility. The juvenile court also found that the charged conduct was committed within six months of Crossley being released from Oakview.

{¶ 28} Under factor (D)(8), the juvenile court found that Crossley was physically mature enough for transfer to adult court, but not emotionally or psychologically mature enough. The juvenile court's finding under factor (D)(9)—whether there was insufficient time to rehabilitate Crossley within the juvenile system—is unclear. Under that finding, the juvenile court simply indicated that the GAL initially reported that Crossley was not amenable to the services of the juvenile justice system, but later stated at the amenability hearing that it would be appropriate to commit Crossley to DYS for juvenile services.

{¶ 29} Under factors (E)(1), (E)(2), and (E)(3), the juvenile court found that the victims did not induce or facilitate Crossley's charged conduct, that Crossley had not been provoked in committing the charged conduct, and that he was the principal actor. Consistent with its finding under factor (D)(1), in relation to factor (E)(4), the juvenile court found that Crossley

had caused physical harm to the victims. Under factor (E)(5), the juvenile court found that Crossley had been previously adjudicated a delinquent child on felony-level offenses.

{¶ 30} Consistent with factor (D)(8), under factor (E)(6), the juvenile court again found that Crossley was physically mature enough for transfer to adult court, but not emotionally or psychologically mature enough. Under factor (E)(7), the juvenile court found that Crossley had problems with impulse and mood control, emotional regulation, post-traumatic stress disorder, and was on the lower range of normal for intellectual capabilities.

{¶ 31} Under factor (E)(8), the juvenile court cited Dr. Hrinko's opinion that Crossley may be amenable to juvenile justice system services if he were to remain in a secure facility for 18 to 24 months in a structured environment. The juvenile court, however, also found that Hrinko had acknowledged that Crossley posed a significant risk to the safety of the community. In addition, the juvenile court referenced the GAL's report, which indicated that Crossley was not amenable to the services of the juvenile justice system. However, the juvenile court considered that the GAL had changed his mind on that matter and recommended committing Crossley to DYS.

{¶ 32} The record supports the juvenile court's findings on each of the factors under R.C. 2152.12(D) and (E). After weighing the factors, the juvenile court concluded that they supported transferring Crossley's case to adult court. The juvenile court was particularly concerned about the significant danger that Crossley posed to the community. The juvenile court found that such danger outweighed any chance that Crossley might change his behavior in the juvenile system. The juvenile court also considered the fact that Crossley had a history of carrying firearms and allegedly had used a firearm during the charged conduct. The juvenile court further noted that the charged conduct occurred less than six

13

months after Crossley had been released from Oakview and while he was on intensive probation.

{¶ 33} Although the juvenile court's amenability determination goes against the opinions and recommendations of Dr. Hrinko and the GAL, we have recognized that a juvenile court "has discretion to disagree with an expert's opinion regarding amenability." (Emphasis deleted.) *State v. Ellis*, 2022-Ohio-147, ¶ 23 (2d Dist.). In contrast, a juvenile court abuses its discretion when it fails to consider the reports and opinions of the expert and guardian ad litem in an amenability determination. *Id*. at ¶ 26. That, however, is not what happened here. In this case, it is clear from the record that the juvenile court considered Hrinko's opinion and the opinion of the GAL on the issue of whether Crossley was amenable to rehabilitation within the juvenile system. The juvenile court simply disagreed with those opinions and found that the danger Crossley posed to the community outweighed taking any chance on trying to rehabilitate him in the juvenile system. This was not unreasonable, especially because Dr. Hrinko indicated that Crossley posed a high risk of ongoing, inappropriate behaviors such as violence and aggressiveness towards others and that he was frequently involved with firearms.

{¶ 34} We recognize that the juvenile court's decision might seem harsh given that Crossley suffers from mental illnesses, has no real familial support, and was only 14 years old at the time of the charged conduct. While we might have reached a different conclusion than the juvenile court, we cannot say that its decision was not supported by a sound reasoning process. Again, "'[i]f there is some rational and factual basis to support the [juvenile] court's decision, we are duty bound to affirm it regardless of our personal views of the evidence.'" *Howard*, 2018-Ohio-1863, at ¶ 16 (2d Dist.), quoting *West*, 2006-Ohio-3518, at ¶ 10 (4th Dist.).

14

**{¶ 35}** The juvenile court's decision has a reasonable factual basis. Crossley's charged conduct against two unsuspecting teenage victims was severe. They endured serious physical and psychological harm. Crossley used a firearm during the charged conduct, and he has a history of repeat firearm offenses. Throughout his involvement in the juvenile system, Crossley engaged in a continuous pattern of inappropriate conduct despite receiving multiple services over an extended period of time. It was reasonable and not an abuse of discretion for the juvenile court to find that Crossley was not amenable to rehabilitation within the juvenile system.

**{¶ 36}** We note that the State argued that Crossley had waived his ability to contest the juvenile court's amenability determination, because after his case was transferred to the general division, he pled guilty to some of the charged offenses. Ohio's Fourth Appellate District has held that a juvenile's ability to contest the juvenile court's amenability determination on appeal is waived if the juvenile enters a guilty plea after his case is transferred to the general division of a common pleas court. *State v. Moore*, 2022-Ohio-460, ¶ 13-24 (4th Dist.). Similarly, Ohio's Seventh Appellate District held that "a defendant who pleads guilty in the general division of the common pleas court waives the ability to contest the sufficiency and weight of the evidence presented at the probable cause hearing in the juvenile court." *State v. Zarlengo*, 2021-Ohio-4631, ¶ 46 (7th Dist.). In contrast, Ohio's Sixth and Eighth Appellate Districts have held that a guilty plea in the general division does not preclude an appeal of the juvenile court's amenability determination. *State v. Coleman*, 2025-Ohio-773, ¶ 42-44 (6th Dist.); *State v. D.T.*, 2024-Ohio-4482, ¶ 76-80 (8th Dist.). This court has not yet ruled on the wavier issue, which is currently pending in the Supreme Court of Ohio. *State v. D.T.*, 2024-Ohio-4482 (8th Dist.), *appeal accepted*, 2025-Ohio-231.

**{¶ 37}** Having already determined that the juvenile court did not abuse its discretion in its amenability determination, we need not address whether Crossley waived the right to challenge the amenability determination by entering a guilty plea.

**{¶ 38}** Crossley's assignment of error is overruled.

## Conclusion

**{¶ 39}** Having overruled Crossley's assignment of error, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and TUCKER, J., concur.